Joseph F. Gagliabdi, J.
Third-party defendants, Sheldon and Fanny Safer, have brought on a motion to dismiss the third-party complaint in action number one. This motion raises important questions regarding the application of the apportionment principles set forth in Dole v. Dow Chem. Co. (30 N Y 2d 143) and Kelly v. Long Is. Light. Co. (31 N Y 2d 25).
On June 16,1967 two motor vehicles collided on Saxon Woods Road in the City of White Plains. Vehicle number one was operated by Sheldon Safer, son of the absentee owner Fanny Safer. Plaintiffs Marc Liebman, Michael Ende and Carl Lombardi, Jr-.[1] were passengers in the Safer automobile. Vehicle number two was being operated by George W. .Scott in the course of business on behalf of his employer O^son and Gordon Stationers; and is owned by the Hertz Corporation. In January or February, 1968 these latter parties were sued by Marc Liebman (Action No. 1) for damages for personal injuries. In addition thereto, Liebman joined as party defendants two municipalities, the County of Weschester and the City of White Plains, and Margaret T. Noonan whose real property abuts the intersection *999 where the accident occurred. Thereafter, the Safers[2] commenced an action (Action No. 2) for similar relief against the same defendants. Subsequently, Michael Ende and Carl M. Lombardi, Jr. initiated a lawsuit (Action No. 3) against the same defendants with the exception of the Safers. Action No. 4 was begun by George W. Scott against the Safers only.
On June 18,1968 the court (Dillon, J.) issued an order directing a joint trial of the separate actions. Thereafter, plaintiffs in Action No. 3 (Elide and Lombardi, Jr.) moved for leave to serve a supplemental summons and amended complaint to join the Safers as party defendants. The court (Marbach, J.) granted the application but by an unexplained procedure the new cause of action became Action No. 6- Subsequently, plaintiffs in Action No. 3 moved to consolidate action number 5 with the other actions. The court (Slifkin, J.) granted the motion to the extent that “ a joint trial be had of the several actions ”.
In the latter part of March, 1972 the matter was assigned for trial and a bifurcated trial was directed. Prior thereto, plaintiff Liebman discontinued his action against the municipalities and real property owner,[3] On March 28,1972 the jury returned its verdicts. All plaintiff passengers prevailed on the liability phase of the split trial. The municipalities and real property owner were exonerated in the two actions in which they remained as parties. Verdicts of no cause of action were returned in. Actions Nos. 2 and 4. The results may be illustrated as follows:
action parties juey veediot
No. 1 Liebman v. Scott, Olson for plaintiff
& Gordon Stationers,
Hertz Corporation
*1000 ACTION PARTIES JURY VERDICT
No. 2 Safers v. same defend- no cause of action ants as in Action No. 1 and County of Westchester, City of White Plains, Noonan
No. 3 Ende and Lombardi, Jr. v. same defendants as in Action #2 for plaintiffs against Scott, Olson & Gordon Stationers, Hertz Corp. only
No. 4 Scott v. Safers no cause of action
No. 5 Ende and Lombardi, Jr. for plaintiffs v. Safers
The damage aspect of the matter was set down for trial during the September, 1972 Term.[4] On March 22, 1972 the Court of Appeals decided Dole v. Dow Chem. Co. (30 N Y 2d 143). On August 30,1972 defendants in Action No. 1 (Scott, Olson & Gordon Stationers, Hertz Corp.) served a third-party summons and complaint on Sheldon and Fanny Safer pertaining to the claims of negligence asserted by Liebman only. The damage phase of the trial has been stayed pending disposition of the within motion. No judgment has been entered in any of the separate actions.
To recapitulate, Sheldon and Fanny Safer, the third-party defendants, now move to dismiss the third-party complaint in Actinia No. 1. The third-party plaintiffs contend that the court can fashion a remedy whereby the jury that passes upon damages can also decide the question of apportionment. The third-party defendants urge that no exceptions were taken to the Trial Judge’s charge which charge now constitutes the law of the case, thereby precluding assertion of the third-party claims. Additionally, said defendants argue that the doctrine of res judicata applies, and, further, that a third-party complaint may not issue at this stage of the proceedings. Plaintiff Liebman joins in the motion to dismiss the third-party action on the ground that the proceedings on damages will be delayed if a jury must pass upon the apportionment question.
It must be noted at the outset that application of the Dow principles to the matter at bhr does not raise any issue of retrb *1001 activity (cf. Welborn v. DeLeonardis, N. Y. L. J., July 6, 1972, p. 2, col. 4; see Meade v. Roberts, 71 Misc 2d 120). Dow applies to cases in the normal appellate process whether at the pleading stage (Frey v. Bethlehem Steel Corp., 30 N Y 2d 764) or after trial (Kelly v. Long Is. Light. Co., 31 N Y 2d 25, supra). At bar, the verdicts postdate Dow, as will the judgments. Consequently, the apportionment principles are applicable to this case (cf. Matter of Huie [Furman], 20 N Y 2d 568; Spindell v. Brooklyn Jewish Hosp., 35 A D 2d 962). The primary question for resolution, therefore, is whether the allocation of defendant responsibility may be determined at the damage phase of this split trial.
Before discussing this very important issue, the court shall address itself to the other contentions presented by the parties. First, it is immaterial whether the doctrines of res judicata or collateral estoppel apply to the verdict portion of the case (cf. 8 Carmody-Wait 2d, New York Practice, § 63:19), since it is conceded that the findings on negligence may not be relitigated in this forum. The determinations on negligence constitute the “ law of the case ” for purposes of the second phase of the trial (1 Carmody-Wait 2d New York Practice, ■§§ 2:64-2:69). Secondly, absent a statute of limitations problem (cf. Musco v. Conte, 22 A D 2d 121), third-party practice is permitted by statute at any time after service of an answer (CPLB 1007). Nonetheless, it has been held that a third-party complaint may not issue during trial unless a court order is obtained (Acetate Box Corp. v. Johnsen, 193 Misc. 54; see Melino v. Tougher Heating & Plumbing Co., 23 A D 2d 616; 3 Carmody-Wait 2d, New York Practice, § 19:11). However, research has failed to elicit a situation where, as here, process was served during a hiatus in the split trial. Accordingly, the court declines to adjudicate the question of timeliness on such tenuous grounds. For the purposes of this discussion it shall be presumed that the third-party complaint was properly served within the meaning of CPLB 1007.
Consequently, this case raises broad ancillary questions regarding implementation of the apportionment rules at split trials. It is noteworthy that apparently only one other jurisdiction in the United States weighs relative degrees of fault among tort-feasors in the absence of a comparative negligence scheme that would include plaintiffs (6 Del. Code Ann., tit. 10, § 6302, subd. [d]). The cited statutory provision is not mandatory and the court in the first instance determines whether the *1002 jury shall consider the issue of apportionment. Annotations to the cited statute do not reveal any cases concerned with the apportionment question in the context of jury instructions. In other jurisdictions that authorize apportionment (see e.g., Packard v. Whitten, 274 A. 2d 169 [Me.]; Bielski v. Schulze, 16 Wis. 2d 1), the jury is instructed in tandem with the applicable comparative negligence scheme and is charged simultaneously on the issues of liability and apportionment. Some jurisdictions use special verdicts while others utilize general verdicts; And some jurisdictions permit the jury to return dollar and cents verdicts while others require a percentage allocation and ultimate calculation by the court (see Ghiardi & M. Hogan, “ Comparative Negligence — The Wisconsin Rule and Procedure ”, 18 Defense L. J. 537 [1969]; P. Bouchard, “ Apportionment of Damages Under Comparative Negligence ”, 55 Mass. L. Q. 125 [1970]; W. Flynn, “ Comparative Negligence: The Debate ”, 8 Trial 49 [May/June 1972]; W. Schwartz, “ Pure Comparative Negligence in Action 34 ATL. L. J. 117 [1972]; Maurice Rosenberg, “ Comparative Negligence in Arkansas: A ‘ Before and After ’ Survey,” 13 Ark. L. Rev. 89 [1959]; William L. Prosser, “ Comparative Negligence ”, 51 Mich. L. Rev. 465 [1953]; Ann. 8 ALR 3d 722, “ Comparative Negligence — Multiple Tortfeasors ”; PJI2:180).
In this jurisdiction comparative negligence is not yet the law and there is a policy in this department to split tort trials. Hence, the question arises at which stage of the split trial should the apportionment charge issue. Third-party plaintiffs herein contend that such charge may properly be given at the damage phase of the proceedings. However, the consensus of the Trial Judges at the present time is to use a two-step charge, whether or not the trial is split (Nathaniel T. Helman, New York Contributory Negligence: The Future Course of “ Dole ”, N. Y. L. J., Sept. 18,1972, p. 1, col. 3). Thus, in a case where a single plaintiff .sues two defendants the present scheme is to charge the jury pursuant to somewhat modified pre-Dow principle^ and if they return a Verdict .against bpth defendants to reinstruct them on the apportionment rules and obtain a second verdict allocating responsibility. In the case postulated it is .assumed that an apportionment request was made, although Dow may be read as mandating apportionment even in the absence of appropriate pleadings (see Lipson v. Gewirtz, 70 Misc 2d 599; cf. Joseph M. McLaughlin, Supplementary Practice Commentary, McKinney’s Cons. Laws of N. Y. Book 7B, CPLR 1007; 1972-1973 Annual *1003 Pocket Part, p. 78).[5] In any event, it may reasonably be asked why dual instructions are desirable.[6] The answer seems to lie within the philosophy of the Dow and Kelly opinions. The Court of Appeals has adoptd the modern view regarding the shift of inter se responsibility, but, having performed that feat has also •seen fit to hold the prime defendants to their common-law joint and several liability as regards the plaintiff. Accordingly, since the tenor of these pronouncements is to benefit defendants as among themselves, neither Dow nor Kelly may be read as limiting plaintiff’s opportunities for judgment. Consequently, it would be manifestly unfair to plaintiffs to experience a mistrial where the only unresolved issue is the degree of fault among the defendants. The better rule, therefore, appears to be use of the two-step charge as described above.[7] If in fact the jury cannot agree on the degree of defendant responsibility plaintiff still has his verdict upon which judgment may be entered and defendants can thereafter possibly relitigate the question of indemnity among themselves or request the court to determine the issue,[8]
*1004 It may be argued that an interlocutory judgment, entered upon a jury finding that joint defendants were negligent, which fails to incorporate allocation of responsibility because of a jury disagreement on that issue, is defective. Such issue would present a novel question in this State but we are not without guidelines.[9] *******9 A jury verdict “is a very important act ’ ’ (French v. Merrill, 27 App. Div. 612, 614, app. dsmd. 157 N. Y. 704). It represents a determination 1 ‘ made out of court and reported to the court ” (Henavie v. New York Cent. & Hudson Riv. R. R. Co., 154 N. Y. 278, 282) which constitutes ‘ ‘ the culmination of the trial and embodies the conclusions of the jury upon the questions of fact litigated upon the trial ” (French v. Merrill, supra at p. 614). A judgment recites the action -of the jury (Davis v. Ross, 259 App. Div. 577) and is a judicial determination of the rights of the parties (CPLR 5011; Klepper v. Canadian Pacific Ry. Co., 193 Misc. 808). Entry or docketing of the judgment is a ministerial act (Cornell v. Cornell, 7 N Y 2d 164). A judgment may be final or interlocutory. An interlocutory judgment by its nature is incomplete; it determines some rights of the parties but does not finally end the suit (8 Carmody-Wait 2d, New York Practice, §§ 63:19, 63:20). Consequently, it is concluded that a general verdict on liability only is sufficient for entry of an interlocutory judgment in favor of a plaintiff and is not rendered imperfect for failure to incorporate degrees of fault (cf. CPLR *1005 4111, subd. [a]). Furthermore a careful reading of the Kelly (31 N Y 2d 25, supra) case supports this conclusion. There the Court of Appeals did not order a new trial on the question of apportionment but remanded the matter to the Trial Judge to determine relative degrees of fault. It is true that the defendants consented to that procedure, but, even in the absence of consent, the court’s opinion expressly states that in no event would plaintiff be deprived of his “ right to recover against any joint tort-feasor in a separate or common action the total amount of his damage suffered and not compensated” (supra, p. 30). It necessarily follows that a verdict and interlocutory judgment on liability' without apportionment are valid, if only because the apportionment feature of the case really constitutes a separate cause of action on behalf of the defendants (cf. CPLR 5012). Any other reading of the Kelly opinion would seemingly necessitate a complete revision of present concepts regarding joinder of parties and intervention (see Municipal Serv. Real Estate Co. v. D. B. & M. Holding Corp., 257 N. Y. 423; Siskind v. Levy, 13 A D 2d 538; Weidman v. Sibley, 16 App. Div. 616; Anderson v. Wright, 132 Misc. 844) as well as re-examination of the rules pertaining to statute of limitations problems (CPLR 203, subd. [b]; Prudential Ins. Co. of Amer. v. Stone, 270 N. Y. 154; CPLR 203, subd. [e]; Trybus v. Nipark Realty Corp., 26 A D 2d 563) and challenges against jurors (CPLR 4109; 4 Weinstein-KornMiller, N". Y. Civ. Prac., par. 4109.05). That some of the aforementioned procedural changes may come to pass does not give sustenance to our hypothetical argument on defective judgments.
In a third-party situation the process of allocating responsibility may seem somewhat more complex, but the above rationale mandates adherence to the principles we have considered. The court will charge the jury simultaneously regarding liability of the prime defendants and the responsibility over of the third-party defendants under pre-Dow rules, except that the active-passive principles will not be charged as formerly. Thereafter, if the jury finds all such parties responsible, they will next be instructed to allocate fault: first, between the prime defendants at 100%; and, second, between the impleaded parties and their impleader at 100%.[10]
*1006 The next problem concerns the timing of the apportionment charge in a split trial context. This issue is more easily resolved. Defendants are entitled to appeal from interlocutory judgments adjudicating them responsible on the liability phase of a split trial (Matter of Abel v. Monteleone, 39 A D 2d 741; Matter of Jack Parker Constr. Corp. v. Williams, 35 A D 2d 839). While it is anticipated that the opportunity for such appeals will not often arise because the damage aspect will usually be tried forthwith (Trimboli v. Scarpaci Funeral Home, 37 A D 2d 386, 389, n. 3, affd. 30 N Y 2d 687; Hans Zeisel & Thomas Callahan, ‘ ‘ Split Trials and Time Savings”, 76 Harv. L. Rev. 1606 [1963]; Joseph M. McLaughlin, Supplementary Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 603,1972-1973 Annual Pocket Part, pp. 45-46), occasionally such situations will present themselves. If defendants are to have a meaningful appeal from interlocutory judgments, it is obvious that allocation of responsibility be had prior to the appeal. Consequently, the two-step charge is best utilized at the liability phase of the split trial. To reserve the allocation instruction until after a determination on damages will effectively deprive defendants of their right to present intelligible arguments to the appellate courts upon adjudication and appeal from the resolution of the liability issue. Finally, a factor not to be ignored is the probability that more cases will be settled after the liability-apportionment phase with the significant benefit of judicial time saving than would settle out after a final determination on damages.
If my understanding of the Bow-Kelly rationales is correct, it becomes apparent that the only type of apportionment upon which a jury could express itself at the liability phase is percentage allocation. Thereafter, upon the damage aspect of the case, the jury will return one monetary verdict in either a joint defendant situation or third-party action and the court will cal- - culate the appropriate sums for apportionment purposes (cf. CPLR 4533-b).
To summarize, it is the court’s opinion that, in split trials, the two-step percentage allocation charge is preferred, but that is not to say that it must be followed in every case. One can envision many situations where it would be inappropriate or impossible to utilize this procedure. For example, where liability is *1007 conceded or is determined by way of a motion for summary judgment, the charge on allocation (percentage or dollars and cents, depending upon the jurist’s predilections) must be given either simultaneously or in split fashion upon the damage aspect of the case. Accordingly, it is not inconceivable for the second jury in this case to consider the question of apportionment. Consequently, the crux of the within matter is whether the issue should, under the unique circumstances of this case, be submitted to them.
In the case at bar, third-party plaintiffs urge that, if the apportionment question is tried before the jury that will assess damages, all issues in this case will have been, resolved. However, the parties have not as yet instituted third-party proceedings in Actions Nos. 3 and 5. It will be recalled that despite Hr. Justice Habbach’s decision granting leave to join the Safers as party defendants in Action No. 3, the parties therein treated the addition of the Safers as a separate aption. This view is re-enforced by the subsequent order which directed that Action No. 5 be jointly tried with Actions Nos. 1 through 4, and, of course, the existence of separate verdicts.
The parties are deemed to have chartered their own procedural course (Stevenson v. News Syndicate Co., 302 N. Y. 81, 87; Riemer v. Riemer, 31 A D 2d 482, 488; Davis v. Ross, 259 App. Div. 577, supra) and for all intents and purposes Actions Nos. 3 and 5 must be deemed separate proceedings. This fact leads to problems which will tend to complicate the trial on damages.[11] *1008 Since these are joint trials with separate judgments (Padilla v. Greyhound Lines, 29 A D 2d 495; Vidal v. Sheffield Farms Co., 208 Misc. 438) the separate units of defendants in Actions Nos. 3 and 5[12] do not have any right to statutory contribution (Greyhound Corp. v. General Acc. Fire & Life Assur. Corp., 14 N Y 2d-380; CPLR 1401), nor does Dow apply to said parties vis-a-vis inter se claims in the separate actions (Pell v. Mistrulli, N. Y. L. J., Sept. 27,1972, p. 21, col. 4). Accordingly, it is apparent that, for apportionment to be had anlong the defendants in Actions Nos. 3 and 5, third-party process must issue or an indemnity action commence after judgment on damages.
Furthermore, if the court permitted, the third-party action to stand, plaintiff Liebman could request leave to amend his complaint to assert a cause of actipn against the Safers (’CPLR 1009) and, absent a Statute of Limitations problem, could attempt to use the prior verdict obtained by his copassengers against the Safers in his own behalf (cf. Miraglia v. Miraglia, 106 N. J. Super. 266). Of course, the fact that Liebman has not amended his complaint to assert a claim against the Safers does not prevent a determination on apportionment (Brown v. Haertel, 210 Wis. 354).[13] On the other hand, in those jurisdictions which *1009 permit impleader for contribution, delay in commencing the third-party action is a ground for denying the relief sought (Doall v. Michigan Cons. Gas Co., 23 Mich. App. 454; Weeks-Makswell Constr. Co. v. Belger Cartage Serv., 409 S. W. 2d 793 [Mo.]). Since Dow is relatively new, amendments to pleadings in light of its import have been permitted on the eve of trial (Sanchez v. Hertz Rental Corp., 70 Misc 2d 449; Meade v. Roberts, 71 Misc 2d 120). However, the unique facet of the instant application is that the third-party action has been commenced during a hiatus in the split trial. Plaintiff Liebman contends that a jury trial on the issue of apportionment will unduly delay the determination of the main action, which is a ground for dismissal of the third-party complaint (CPLR 1010). This argument has merit.
It is clear that the issue of apportionment before a different jury will necessitate a virtual retrial of the negligence claims in order to determine relative degrees of fault. Additionally the Safers may desire to implead others. Moreover, the apportionment problems in Actions Nos. 3 and 5 will not have been solved. Accordingly, better procedure dictates that the parties in the third-party action (and the potential impleader action) get their pleadings in proper order and that the assessment aspect of this trial be tried immediately. The third-party complaint is dismissed without prejudice and the matter restored to the head of the ready day calendar. The stay contained in the order to show cause shall terminate upon entry of the order hereon.

. Coplaintiffs Sidney Ende and Carl Lombardi sued in their derivative capacity but for the purposes of this motion and ease of description their causes of action may be disregarded;

. The action included Edward Safer as guardian for Sheldon Safer. Additionally, Fanny Safer asserted a cause of action for property damage and the Trial Judge directed a verdict thereon in her favor against the defendants Scott, Olson and Gordon Stationers and the Hertz Corporation.

. The propriety of Liebman’s discontinuance against some but not all defendants has not been raised by the parties. However, in light of Dow it has been noted that the rules pertaining to standing to appeal by one defendant from an order exonerating a codefendant may have to be re-examined (Joseph M. McLaughlin, Supplementary Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 1007, 1972-1973 Annual Pocket Part, p. 80). Consequently, the holding in Dee v. Spencer (233 App. Div. 217) that during trial plaintiff could not voluntarily agree to a nónsuit in favor of one of the defendants, may have been resurrected by the Dow ruling (see CPLR 3217, subd. [b]). In any event, a defendant in a separate action lacks standing to object to plaintiff’s discontinuance as to a defendant in a different action, although the actions are jointly tried (Turk v. Beebe Sen. Corp., 267 App. Div. 767).

. The record does not indicate why the trial on damages was delayed.

. The court is not called upon to answer the question whether Bow applies in the absence of appropriate pleadings. Unquestionably, Bow may not be read as requiring apportionment where, as here, the parties seeking apportionment are not codefendants as to each other with the exception of the third-party claim which injects Bow into the case.

. In a joint defendant context one party may raise the issue that CPLK. 1401 pre-empts the field. However, it would seem that Bow and Kelly merely give sustenance to the phrase “ pro rata share ” as contained in the cited statute.

. A single charge on liability and apportionment with concomitant use of special verdicts should be avoided. Special verdicts (requiring answers to specific questions) tend to confuse the jury (cf. David D. Siegel', Supplementary Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 4111,1972-1973 Annual Pocket Part, pp. 55-58).

. In a joint defendant contribution context the former rule was that a judgment on liability and damages could not be collaterally attacked (Employers' Liab. Assur. Corp. v. Post & McCord, 286 N. Y. 254). However, the party from whom contribution was sought could defend on the ground that he was not in pari delicto (West v. City of New York, 276 N. Y. 524; Security Mut. Cas. Co. v. American Ice Co., 268 App. Div. 924; cf. Wold v. Grozalsky, 277 N. Y. 364). In those jurisdictions which permit contribution in the absence of a joint judgment, the questions open for litigation among the defendants in the contribution proceeding depend upon their participation at the original trial (see Mikens v. Marascio, 58 N. J. 569; Cook v. Toney, 245 Md. 42; Sattelberger v. Telep, 14 N. J. 353; East Coast Freight Lines v. Mayor, Etc., 190 Md. 256). In a post-Dow matter where one party seeks proportionate indemnity the extent of the defendant’s participation at the original trial may be the deciding factor in determining what issues can be relitigated (see Cooperman v. Ferrentino, 37 A D 2d 474; id. 38 A D 2d 945; Gallivan v. Pucello, 38 A D 2d 876). Noteworthy, however, are the former rules regarding common-law indemnity actions which may remain viable in third-party actions such as at bar. Absent vouching-in (Oceanic Steam Nav. Co. v. Compania Transatlantica Espanola, 134 N. Y. *1004 461; id. 144 N. Y. 663; Delaware & Hudson B. B. Go. v. Adirondack Farmers Co-op. Exch., 33 A D 2d 962, mod. 34 A D 2d 863) the judgment in the original action is presumptive evidence only and the amouht of damages may be relitigated where notice of the action was not given the indemnitor or, if notice given, an opportunity to defend was not offered (Municipal Serv. Real Estate Co. v. D. B. & M. Holding Corp., 257 N. Y. 423; Feuer v. Menkes Feuer, Inc., 8 A D 2d 294 [Breitel, J.]; Whitaker v. Equitable Laundry Mach. Corp., 131 Misc. 505, affd. 223 App. Div. 881; 28 N. Y. Jur., Indemnity, § 27; 9 Carmody Wait 2d, New York Practice, § 63:236; 10 Encyclopedia N. Y. Law, Damages, § 582).

. Indeed, prior to Dow, it was held erroneous to permit the jury to apportion compensatory damages among joint tort-feasors (Barrett v. Third Ave. R. R. Co., 45 N. Y. 628; Polsey v. Waldorf-Astoria, 216 App. Div. 86, app. dsmd. 243 N. Y. 553; Foy v. Barry, 159 App. Div. 749). The apportionment was treated as mere surplusage and judgment entered in the greater amount awarded where the separate verdicts were unequal (Farber v. Demino, 254 N. Y. 363; Klepper v. Seymour House Corp., 246 N. Y. 85; Beal v. Finch, 11 N. Y. 128; Raplee v. City of Corning, 6 A D 2d 230; contra, Wands v. City of Schenectady, 171 App. Div. 94) even where the record established that plaintiff was to recover the aggregate individual amounts (O’Shea v. Kirker, 4 Bosw. 120). Where separate verdicts in equal amounts were returned by the jury, judgment was entered in the aggregate (Hanley v. Brooklyn Heights R. R. Co., 127 App. Div. 355; Post v. Stockwell, 34 Hun 373; Carrig v. Oakes, 173 Misc. 793, affd. 260 App. Div. 989).

. For example, P v. Di and D2; D2 impleads D3 and D4. Jury first finds that P should recover against Di and Dg; it also concludes that Dg should recover over against both Ds and D4. The jury is next charged on apportionment and returns the following percentages: (1) Di (20%) and Dg (80%); and (2) Dg (10%), Ds (40%) and D4 (50%).- Thus, Dg recovers 72% (.80 X .90) of his *1006 allocated responsibility. P can collect the total amount (100%) from either Di or Dz. Assume that the prime defendants pay in proportion to their fault and that the jury returns a verdict of $100,000 on the damage aspect of the case. Bi pays $20,000 and Dz pays $80,000 of which $72,000 is recoverable from Ds (©2,000) and D4 ($40,000).

. Separate actions against different joint tort-feasors are permissible (Commissioners of State Ins. Fund v. Farrand Optical Co., 295 N. Y. 493). However, the payment of one judgment represents full satisfaction (Dahlstrom v. Gemunder, 198 N. Y. 449; Bundt v. Embro, 27 A D 2d 931, affd. 21 N Y 2d 1032; Bundt v. Embro, 48 Misc 2d 802; McTigue v. Levy, 260 App. Div. 928; Foy v. Barry, 159 App. Div. 749; CPLR 3002, subd. [a]; cf. General Obligations Law, § 15-102; General Obligations Law, § 15-108, added by L. 1972, ch. 830) and it has been held that payment into court by a party constitutes a satisfaction (De Casiano v. Morgan, 1 A D 2d 646, mot. for lv. to app. den. 3 A D 2d 651; De Casiano v. Morgan, 6 Misc 2d 41, app. dsmd. 8 A D 2d 609; Sarine v. American Lumbermen’s Mut. Cas. Co., 258 App. Div. 653; Collins v. Smith, 255 App. Div. 665; see Schultz v. Baker, 273 App. Div. 186; Knickerbocker v. Colver, 8 Cow. 111; compare Civ. Prac. Act, § 530, subd. 4 with CPLR 5021, subd. [a], par. 3; contra, Ann. 40 ALR 3d 1181 “One Joint Tortfeasor Pays Judgment — ■ Effect ”; also, see, Prosser, Law of Torts [4th ed., 1971], p. 300; note, 68 Harv. L. Rev. 697 [1955]). Thus, the rule has evolved that in cases of vicarious liability with no punitive damage aspect the first judgment on damages controls the outer limit of the second judgment where the first is against the primary wrongdoer (Gallivan v. Pucello, 38 A D 2d 876; Goines v. Pennsylvania B. R. Co., 6 A D 2d 531, mot for lv. to app. dsmd. 5 N Y 2d 1002; Sarine v. American Lumbermen's Mut. Cas. Co., supra; All v. Delaware *1008 & Hudson R. R. Corp., 176 Misc. 977 [Bergan, J.]; Ann. 141 A. L. R. 1168 “Derivative Liability — Limit of Recovery”). However, that is not to say that the ancient rule of de melioribus damnis [take the higher judgment] is a dead letter (Kirchner v. State of New York, 223 App. Div. 543; Krug v. Pitass, 16 App. Div. 480, revd. on other grounds 162 N. Y. 154; Kasson v. People ex rel. Peter Rease, 44 Barb. 347; Thomas v. Rumsey, 6 Johns. 26; Livingston v. Bishop, 1 Johns. 290; see Lord v. Tiffany, 98 N. Y. 412; Woods v. Pangburn, 75 N. Y. 495; cf. Kelly v. Long Is. Light. Co., 31 N Y 2d 25, 30).

. In apportioning liability under CPLR 1401 the former rule was "that defendants would be treated as a class or unit where liability was derivative (Zeglen v. Minkiewicz, 12 N Y 2d 497; McCabe v. Century Theatres, 25 A D 2d 154, affd. 18 N Y 2d 648; Benjamin v. Faro, 1 A D 2d 948; Martindale v. Griffin, 233 App. Div. 510, affd. 259 N. Y. 530). Comparative negligence literally requires weighing the relative degrees of fatilt of each tort-feasor individually (C. Heft and C. Heft, “Two-Layer Cake: No Fault and Comparative Negligence ”, 58 ABA J. 933 [1972]; cf. Ann. 8 ALR 3d 722 “ Comparative Negligence- — Multiple Tortfeasors”). However, in Kelly the Court„,of Appeals indicated that it was not changing the principles applicable to vicarious liability cases (31 N Y 2d, supra, at p. 30).

. Former rule 56 of the Admiralty Rules (now Fed. Rules Civ. Pro., U. S. Code, tit. 28, appendix, rule 14) provided that once implea-der occurred plaintiff’s complaint was deemed amended to assert a cause of action against the third-party defendant. Cf. section 315 (subd,_d, par. 3) of the Maryland Rules of Procedure [9B Md. Code Ann.] which provides that if plaintiff fails to amend his complaint against the impleaded party he is thereafter barred from presenting the same claim in a plenary action (State Farm Mut. Auto. Ins. Co. v. Briscoe, 245 Md. 147).